UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMBER L. GUYETTE,

        Plaintiff,

        v.                            Case No. 22-C-1490

MARTIN O'MALLEY,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Amber Guyette filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand. For the reasons that follow, the court concludes that the Commissioner's decision should be affirmed.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 8, 2020. She alleged disability beginning December 4, 2019, when she was 39 years old. R. 107. Plaintiff asserted an inability to work due to fatigue, possible lupus, possible auto-immune disease, possible cancer, leucopenia, anemic, iron deficiency, depression, transmadibular joint syndrome, and confusion. *Id.* After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. ALJ Wayne Ritter conducted a hearing on March 11, 2022. Plaintiff, who was represented by counsel, and a vocational expert

(VE) testified. R. 47–85. During the hearing, Plaintiff amended her alleged onset date to August 24, 2020.

At the time of the hearing, Plaintiff was 42 years old, was five feet and 110 pounds, and lived alone in her own home. R. 65, 69. Plaintiff is a high school graduate. R. 70. While she spent most of her adult life working as a cake decorator, she lost her job for that position at Pick 'n Save in 2019 because her hands shook and she was not able to write on the cakes. R. 70–71. Plaintiff then got a job at a clothing store but only worked there for a short period because she started stuttering and did not have great interactions. R. 71–72. Plaintiff testified that, on August 24, 2020, during an argument with her boyfriend, she fell over the balcony in her bedroom and broke her foot. R. 72. It was after this incident that she applied for social security benefits. *Id.* After she filed her application for social security benefits, she had one last job at a small bakery. *Id.* She stopped working at the bakery in October 2020 because the women there always yelled at each other and called each other bad names. R. 73. Plaintiff testified that she was still looking for work as either a secretary or cake decorator but didn't find anything. R. 61.

Plaintiff indicated that she started receiving mental health treatment in October 2020. R. 64. She stated that she saw a therapist once a week, a psychiatrist every six weeks, and a neurologist once a year. R. 62–63. In her typical day, Plaintiff spends time with her dog and takes it for walks for a half hour to an hour a couple days each week. R. 65, 69. She stated that she watches her four-year-old grandson for four hours a day Monday through Thursday while her daughter is at work. R. 65–66. Otherwise, she cleans and organizes the house. R. 65.

In a twelve-page decision dated April 1, 2022, the ALJ concluded Plaintiff was not disabled. R. 30–41. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 24, 2020, the alleged onset

2

date. R. 32. Next, the ALJ determined that Plaintiff had the following severe impairments: depressive and anxiety disorders. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 34.

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: "she must avoid concentrated exposure to unprotected heights, hazards, and the use of dangerous moving machinery; and she is limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple, work-related decisions, occasional work place changes, and occasional interaction with the public, co-workers, and supervisors." R. 35. The ALJ found that Plaintiff was unable to perform any past relevant work as a cake decorator. R. 40. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of performing jobs existing in significant numbers in the national economy, including laundry worker, transportation cleaner, and cleaner. R. 40–41. Based on these findings, the ALJ concluded that Plaintiff was not disabled from August 24, 2020, through the date of the decision. R. 41. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Plaintiff's sole argument on review is that the ALJ's improper assessment of the evidence resulted in a flawed RFC assessment. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect his ability to work. SSR 96-8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite his limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)

4

(quoting SSR 96-8p). In forming the RFC, an ALJ must review all of the relevant evidence in the record and "consider all limitations that arise from medically determinable impairments." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). An RFC assessment "is a matter for the ALJ alone" to decide. *Id.* at 808. The ALJ must consider the "entire record" and "is not required to rely entirely on a particular physician's opinion." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). In assessing a claimant's RFC, the ALJ has the responsibility of resolving any conflicts between the medical and nonmedical evidence. *Pepper*, 712 F.3d at 363. The court's task "is to determine whether substantial evidence supports the ALJ's RFC conclusion." *Id.*

In this case, the ALJ considered the evidence in the record, including Plaintiff's medical and treatment record, the medical opinions, Plaintiff's testimony and subjective reports of her symptoms, her activities of daily living, and the statements of Plaintiff's mother. The ALJ began by discussing Plaintiff's mental health impairments. He noted that Plaintiff had been diagnosed with various mental health impairments but, for the purposes of his decision, he found that the severe impairments of depression and anxiety encompassed those various diagnoses. R. 36–37. The ALJ concluded that, while Plaintiff clearly suffers from severe mental impairments, her allegations of disabling symptoms and limitations are not consistent with the totality of the evidence. R. 38. He explained that the relatively mild objective clinical findings and Plaintiff's treatment history are not consistent with allegations of disabling symptoms of depression and anxiety. Instead, the record reflects that Plaintiff reported improvement in symptoms with largely routine treatment and managed her symptoms with medication and counseling. The ALJ noted that Plaintiff denied a past history of counseling prior to 2020, psychiatric care, psychiatric hospitalizations, or suicide attempts. *Id.*

Plaintiff asserts that the ALJ ignored relevant clinical signs and findings and treatment notes. But the ALJ addressed the evidence Plaintiff claims he ignored. *See* R. 36–38 (addressing Plaintiff's complaint of severe panic attacks and finding that Plaintiff "must avoid concentrated exposure to unprotected heights, hazards, and use of dangerous moving machinery"); R. 37 (addressing the March 2022 report of psychological testing and neurocognitive assessment). Plaintiff essentially asks the court to reweigh the evidence and overrule the ALJ's conclusions, but this is not the court's role. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (the court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner"). The ALJ adequately discussed the medical records and findings in assessing Plaintiff's RFC.

The ALJ also determined that the nature and scope of Plaintiff's reported activities during the relevant period are not consistent with allegations of disabling mental health symptoms. R. 38. He explained that, although Plaintiff reported problems with various activities of daily living due to depression and anxiety, she lived alone in her own home and was able to take care of her dogs, prepare her own meals, do housework, and shop in stores for necessities. *Id.* He observed that Plaintiff was able to leave her home independently and drive a car, manage her own money, read books daily, and spend time with others daily. Plaintiff was also able to host Thanksgiving dinner for 40 people and was planning on hosting Christmas as well. She also took care of her four-year-old grandchild for at least four hours a day four days a week. R. 66. The ALJ concluded that, despite experiencing symptoms of her mental impairments, Plaintiff remained able to engage in a number of normal day-to-day activities. *Id.*

Plaintiff contends that the ALJ improperly evaluated her activities of daily living. Though an ALJ must consider the claimant's daily activities, among other factors, in evaluating the

intensity and persistence of pain, "this must be done with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). An ALJ cannot place "undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Mendez v. Barnhart*, 439 F.3d 360, 362–63 (7th Cir. 2006). The ALJ did not equate Plaintiff's ability to perform certain activities of daily living with an ability to work full time in this case. Instead, he considered Plaintiff's reported activities to assess the credibility of her statements concerning the intensity, persistence, and limiting effects of her symptoms. *See Pepper*, 712 F.3d at 369 ("The ALJ concluded that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of daily living undermined Pepper's credibility when describing her subjective complaints of pain and disability."). In short, the ALJ did not improperly rely on Plaintiff's reported activities of daily living.

After reviewing the evidence in the record, the ALJ concluded that Plaintiff's medical records document depression and anxiety. R. 38. He noted that, due to her panic attacks with seizure-like activity, Plaintiff must avoid concentrated exposure to unprotected heights, hazards, and use of dangerous moving machinery. Due to problems with concentration and brain fog, the ALJ limited Plaintiff to simple, routine, and repetitive tasks and no fast-paced work. Due to problems with stress and handling changes in routine, the ALJ limited Plaintiff to only simple, work-related decisions and occasional workplace changes. Finally, the ALJ noted that her problems with irritability and social isolation warrant the limitation to occasional interaction with the public, co-workers, and supervisors. *Id.*

Plaintiff criticizes the ALJ's conclusion, asserting that the ALJ failed to provide a logically valid explanation for his departure from the opinions of the state agency consultants. Although

the ALJ must consider the opinions from medical sources in assessing a claimant's RFC, there is no requirement that the ALJ's RFC assessment track verbatim the medical opinions he considers. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record[;] the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." (citation omitted)). After all, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2).

In this case, state agency psychological consultant Deborah Pape, Ph.D., completed a Mental Residual Functional Capacity Assessment form in January 2021. With respect to Plaintiff's sustained concentration and persistence limitations, Dr. Pape found that Plaintiff was moderately limited in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 117. Dr. Pape explained that Plaintiff "generally appears capable of maintaining attention in 2 hour increments with acceptable breaks." R. 118.

As to Plaintiff's limitations in social interaction, Dr. Pape found that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavior extremes. *Id.* She explained that Plaintiff "appears capable of superficial interactions and would do best in jobs not requiring frequent contact with supervisors and coworkers." *Id.*

8

Case 1:22-cv-01490-WCG   Filed 12/29/23   Page 8 of 11   Document 26

With respect to Plaintiff's adaptation limitations, Dr. Pape found that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and explained that Plaintiff "appears capable of handling minor everyday changes in the work setting and would do best in positions that do not expect large scale/frequent changes." R. 119.

At the reconsideration level, Jan Jacobson, Ph.D., reviewed the updated medical record in September 2021. She opined that Plaintiff was moderately limited in the ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 130. Dr. Jacobson explained that Plaintiff is "able to sustain attention for simple tasks for extended periods of two hour segments over the course of a routine workday/workweek within acceptable attention, concentration, persistence and pace tolerances. Unable to sustain attention for detailed tasks." *Id.*

As to social interaction limitations, Dr. Jacobson found that Plaintiff was moderately limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* She explained that Plaintiff "is able to sustain the basic demands associated with relating on an infrequent task-oriented basis to coworkers within the above parameters. [Plaintiff] is able to accept supervision as usually found in the workplace. [Plaintiff] is able to deal with the pubic on an occasional basis." *Id.* With respect to adaptation limitations, Dr. Jacobson found that Plaintiff was moderately limited in the

9

Case 1:22-cv-01490-WCG    Filed 12/29/23    Page 9 of 11    Document 26

ability to respond appropriately to changes in the work setting and explained that Plaintiff "is able to respond appropriately to infrequent changes within the parameters noted above. [Plaintiff] is aware of normal hazards and can take appropriate precautions." *Id.*

Here, the ALJ summarized the state agency psychologists' findings. R. 39. He noted that their opinion that Plaintiff was capable of maintaining attention for simple tasks in two-hour increments with acceptable breaks was consistent with the evidence showing Plaintiff's reports of problems with concentration and brain fog. The ALJ nevertheless noted that Plaintiff also maintained attention during medical appointments and was able to perform various activities independently at home. *Id.* The ALJ explained that the state agency consultants found that Plaintiff was capable of superficial interactions and would do best in jobs not requiring frequent contact with supervisors and coworkers. He observed that, while Plaintiff reported problems with social isolation and irritability, she was cooperative and pleasant during medical appointments and was able to go shopping in stores and to medical appointments. *Id.* The ALJ concluded that the limitation to occasional interaction with the public, coworkers, and supervisors more than adequately accounts for Plaintiff's problems with social interaction. He also noted that Dr. Jacobson added a limitation of only occasional interaction with the public, which the ALJ found was consistent with Plaintiff's ability to cooperate during medical appointments. The ALJ indicated that the state agency consultants opined that Plaintiff was capable of handling minor everyday changes in the work setting and would do best in positions that do not expect large scale/frequent changes. The ALJ found that this opinion was consistent with the evidence showing Plaintiff had difficulty with handling stress and changes in routine, but she was able to live independently and perform various activities of daily living without assistance. *Id.* The ALJ's RFC was not inconsistent with the state agency consultants' findings.

In sum, the ALJ formulated the RFC based upon all of the medical findings and other evidence in the record and provided an accurate and logical bridge from the evidence to his conclusions. His decision is supported by substantial evidence, is not patently wrong, and does not necessitate remand.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge